The National Bronx Bank of New York v. Commissioner.
National Bronx Bank of New York v. Commissioner
Docket No. 110466.
United States Tax Court
1944 Tax Ct. Memo LEXIS 389; 3 T.C.M. (CCH) 60; T.C.M. (RIA) 44016; January 25, 1944
*389 Held, that the amounts of write-downs, or charge-offs, against the cost of bonds made in years prior to the taxable years cannot be restored to the cost basis of the bonds for the purpose of computing gain or loss on the sales of such bonds in the taxable years. Meyer D. Siegel, Esq., and Murray H. Silverman, C.P.A., 65 Park Row, New York, N. Y., for the petitioner, John W. Fisher, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax against petitioner as follows: For 1938, $6,327.95; and for 1939, $9,882.02. It was stipulated that the following amounts are properly excludable from petitioner's income for the years designated as representing non-taxable bad debt recoveries: For 1938, $14,587.49; and for 1939, $10,781.38. Effect to this stipulation will be given under Rule 50. To the extent that the deficiencies determined are not attributable to inclusion in income of the two last above mentioned amounts they (with the exception of other minor adjustments not in issue) are attributable to respondent's determination which petitioner contests, that the basis for gain or loss on sales of bonds was their cost *390 less all amounts thereof written down and deducted by petitioner in its returns for prior years as on account of partial worthlessness of such bonds. Petitioner also claimed in its petition an overpayment of $3,732.37 for the year 1938. The proceeding has been submitted upon a stipulation of facts, oral testimony, and exhibits. The stipulated facts not set forth herein are included by reference. Findings of Fact Petitioner is a national banking association, incorporated March 13, 1926. Its income tax returns for the taxable years involved were filed on an accrual basis with the collector for the 14th district of New York. All the bond write-downs involved herein were made on the order of a national bank examiner. The years in which the write-downs were so made are 1932, 1933, 1935, and 1936. The securities involved herein, the date acquired by petitioner, their par value, their cost, the amounts and years of write-down, the write-down value in the year sold, the selling price, the loss or gain based on write-down value and based on cost are as follows: BONDS SOLD IN 1938:
Date
Par
Acquired
Value
Cost
Chicago North Shore and Milwaukee
6's-1955
12-7-32
$10,000.00
$ 400.00
International Tel. and Tel.
4 1/2-1939
4-16-30
15,000.00
20,375.72
International Tel. and Tel.
4 1/2-1939
4-16-30
15,000.00
19,031.78
City of Nuremberg
6's-1952
3-31-31
15,000.00
14,487.50
St. Paul, Kansas City Short Line
4 1/2-1941
10-20-30
10,000.00
9,887.50
Free State of Prussia
6's-1952
3-28-31
1,000.00
766.65
Totals
$66,000.00
$64,949.15
* National Elec. Power Co.
5's 1978
11-10-28
$20,000.00
$16,775.00
*391 BONDS SOLD IN 1939:
Date
Par
Acquired
Value
Cost
Chicago, Milwaukee & St. Paul
5's-1975
2-3-32
$15,000.00
$12,021.25
St. Louis, San Francisco
4 1/2-1978
3-28-31
30,000.00
25,950.00
Rio Grande & Western
4's-1949
3-28-31
9,000.00
7,780.30
Missouri Pacific
5 1/4-1939
10-17-27
5,000.00
5,000.00
Missouri Pacific
5 1/4-1939
10-17-27
5,000.00
5,000.00
Denver and Rio Grande
5's-1978
3-29-31
15,000.00
12,362.49
Totals
$79,000.00
$68,114.04
Prior Year Write-downs
1932
1933
1935
1936
1938
$ 100.00
$ 5,375.72
4,031.78
10,000
$ 987.50
8,387.50
466.65
100.00
$ 100.00
$28,261.65
$ 1,087.50
$16,000.00
$ 774.00
$ 6,021.25
$ 2,000.00
$ 2,688.00
$19,950.00
2,500.00
1,100.00
3,280.30
500.00
2,650.00
4,537.50
100.00
4,537.50
100.00
7,862.50
500.00
2,575.00
$29,025.00
$19,864.05
$ 3,000.00
$ 9,013.00
Loss
Write-
Based on
Loss
Down
Selling
Write-down
Based on
Value
Price
Value
Cost
$ 300.00
$ 91.00
$ 209.00
$ 309.00
15,000.00
14,567.45
432.55
5,808.27
15,000.00
15,012.75
[#] 12.75
4,019.03
3,500.00
3,710.00
[#] 210.00
10,777.50
1,500.00
783.48
716.52
9,104.02
200.00
198.75
1.25
567.90
$35,500.00
$34,363.43
$ 1,136.57
$30,585.72
$ 1.00
$ 966.58
[#] $ 965.58
$15,808.42
$ 1,312.00
$ 1,156.46
$ 155.54
$10,864.79
2,400.00
2,736.66
# 336.66
23,213.34
1,350.00
1,132.62
217.38
6,647.68
362.50
148.00
214.50
4,852.00
362.50
141.75
220.75
4,858.25
1,424.99
982.69
442.30
11,379.80
$ 7,211.99
$ 6,298.18
$ 913.81
$61,815.86
Less - 1938 write-off
$9 013.00
Loss claimed in return
$52,802.86
*392 [n#] Gain.
Financial statements of the various obligors on the securities involved presented the following figures for the years indicated, as to their assets, liabilities, profit and loss balance, and total net worth. Their operating revenues (whether gross or net not indicated) are also shown as indicated. Profit and Loss
Obligor
Year
Assets
Liabilities
Balance
St. Louis & San Francisco
1933
$468,390,553
$369,530,173
($17,944,835)
Railway System
1935
462,186,388
391,514,485
( 46,203,547)
1936
464,657,885
402,223,508
( 54,470,779)
St. Paul, Kansas City Short
1935
529,543,054
425,824,403
( 26,536,711)
Line
Denver, Rio Grande &
1935
243,199,883
162,362,529
1,529,261 Western Rd.
(Rio Grande & Western Ry.
1936
241,814,255
165,236,135
( 2,736,957)
Co. is part of this system)
Missouri Pacific Railroad
1933
664,947,552
506,987,902
1,843,328 Co.
1935
660,747,871
538,170,053
( 34,012,191)
Chicago, Milwaukee, St.
1935
741,033,294
609,261,680
( 93,253,613)
Paul Pacific R.R. Co.
1936
748,222,570
634,333,179
(111,125,051)
International Telephone &
1935
396,587,644
128,219,914
Earned
Telegraph Corp.
Surplus
(Deficit)
( 2,261,648)
City of Nuremberg
1935
289,213,740
109,074,683
Other
contingent
liabilities,
$11,418,012
*393 Operating
Obligor
Net Worth
Revenue
St. Louis & San Francisco
$98,860,387
$40,694,000
Railway Systems
70,671,903
42,431,000
62,434,349
50,183,000
St. Paul, Kansas City Short
103,718,651
67,117,000
Line
Denver, Rio Grande &
80,837,354
20,944,000
Western Rd.
(Rio Grande & Western Ry.
76,578,120
25,599,000
Co. is part of this system)
Missouri Pacific Railroad
157,959,650
67,954,000
Co.
122,577,818
74,578,000
Chicago, Milwaukee, St.
131,771,614
92,474,000
Paul Pacific R. R. Co.
113,889,391
109,142,000
International Telephone &
268,367,730
2,443,660.03
Telegraph Corp.
City of Nuremberg
Excess of
Excess of
Assets over
Revenue
Liabilities
over
180,129,057
Expenses
$225,549.00
It is conceded by petitioner that National Electric Power Company went into bankruptcy in 1932 and there is no showing as to assets and liabilities for that year. No figures were placed in evidence on the above tabulated matters, as respects the Free State of Prussia, and the Chicago, North Shore and Milwaukee bonds. The returns of the petitioner for the years 1932, 1933, and 1936 claiming the amounts of the write-downs as deductions in those respective years were accepted *394 by respondent as filed. Tax benefits of $334.93 were derived in 1936 from write-downs of $1,087.50 made on bonds sold in 1938, and in the amount of $3,000 from write-downs of $3,000 made on bonds in 1939. No tax benefits were derived in the other years involved. As to the bonds involved herein, and the write-downs thereon in 1935, petitioner took a deduction on its 1935 return therefor in the amount of $28,261.65 as to the bonds sold in 1938 and $19,864.05 as to the bonds sold in 1939. The return for 1935 was finally accepted by the respondent as it was filed. Defaults in interest and market quotations on the bonds involved herein are as listed in the table below. The table also shows the amount outstanding on each issue as of December 31, 1939. Interest
Market Quotation for
Default
Years Indicated
Average
Amount
Since Date
of Quota-
Outstanding
Indicated
High
Low
tions
Dec. 31, 1939
St. Louis & March 1, 1933
1933
San Fransico
29 1/2
6 1/2
18     $108,305,000
Ry. Co.
1934
25 1/2
9 7/8
17 11/16
1935
16    7 3/4
11 7/8
1936
31    14 3/4
22 7/8
1937
33 1/2
9 1/2
21 1/2
1938
14    7 1/2
10 3/4
1939
14    6 1/2
10 1/4
St. Paul August 1, 1933
1933
Kansas City 62 1/2
20    41 1/4
$ 9,984,355
Short Line
1934
37 3/4
13 1/2
25 5/8
1935
18 1/4
11    14 5/8
1936
27    16 1/4
21 5/8
1937
27    7 1/8
17 1/16
1938
11    6    8 1/2
1939
9    3 3/4
6 3/8
Denver & Rio April 1, 1935
1933
12,000,000
Grande R. R.
60    11    35 1/2
Co.
1934
49 1/2
18    33 3/4
1935
24 7/8
11 1/2
18 8/16
1936
32 5/8
23    27 13/16
1937
32 7/8
7 5/8
20 1/4
1938
12    5 1/4
8 5/8
1939
10 3/8
5    7 11/18
Rio Grande & Western Ry.
None shown
1933
Co. (Part of 64 1/8
25 1/2
44 13/16
15,080,000
Denver & Rio 1934
Grande System)
67    40    53 1/2
1935
47 1/2
24 1/2
36    1936
54    37 1/8
45 9/16
1937
52 3/4
18 1/2
35 5/8
1938
20 3/4
12    16 3/8
1939
20    11    15 1/2
Missouri
June 1, 193
(No Data)
12,140,000
Pacific August 1, 1935
1933
Chicago,
59 1/2
11    35 1/4
106,395,096
Milwaukee
1934
& St. Paul
56 1/2
18    37 1/4
1935
26    9 5/8
17 13/16
1936
33 1/2
17 1/8
25 5/16
1937
36 5/6
8    22 5/12
1938
13 1/2
7    10 1/4
1939
12    5 1/4
8 5/8
City of
Nuremberg
(No Data)
(No Data)
(No Data)
Free State of
Prussia
(No Data)
(No Data)
(No Data)
Chicago, North
Shore and
Milwaukee
(No Data)
(No Data)
(No Data)
National
Electric Power
Company
(No Data)
(No Data)
(No Data)
International
Tel. & Tel.
Dec. 31, 1935
Corp.
(No Data)
(No Data)
$37,661,100
*395 In its returns for each of the years 1938 and 1939 petitioner claimed a loss deduction using cost as a basis on all bonds sold in such year, except those of the National Electric Power Company, as to which it reported a gain using the value to which they had been written down as a basis rather than the cost thereof. The respondent disallowed the deductions on the ground that the basis was the cost of the bonds less the amounts written down and deducted in petitioner's returns for prior, years and accepted the return for 1938 as to the gain reported on the bonds of the National Electric Power Company. The bonds written down in the respective years were then worthless to the extent of the write-downs and were then ascertained to be so worthless and charged off by petitioner. Opinion TYSON, Judge: The write-downs of the bonds here involved on order of the bank examiner were for the years 1932, 1933, 1935, and 1936. It is not disputed that the write-downs for the years 1932, 1933, and 1936 were charged off on the books of petitioner at some date not shown in those respective years as ordered by the bank examiner and that deductions in the amounts of such write-downs were claimed by *396 petitioner in its income tax returns for those respective years and allowed by respondent. It is also not disputed that write-downs ordered by the bank examiner in 1935 in the amount of $28,261.65 on bonds sold in 1938 and in the amount of $19,864.04 on bonds sold in 1939 were charged off on its books by petitioner at some date not shown in 1935 and claimed by it as a deduction in its income tax return for that year. However, petitioner contends that respondent did not allow those deductions as so claimed, but, on the contrary, disallowed them. This contention is based upon certain preliminary reports made by an internal revenue agent in charge with respect to certain recommendations proposed to be made to the effect that the deductions involved for the year 1935 be disallowed. But the facts of record show that the final recommendation by that agent to the Commissioner was to the effect that petitioner's reurn filed for 1935 be accepted as correct. This recommendation was approved and the return as filed by the petitioner was accepted by the Commissioner. Therefore, treating all the write-downs involved as having been charged off its books by petitioner and deductions therefor as *397 having been claimed by it in its income tax returns and allowed by respondent for each of the years in which the write-downs were ordered by the bank examiner, we will now consider the other contentions of petitioner. Petitioner contests respondent's determination, that the basis for loss on sales of bonds involved was the cost thereof less all amounts written down at the order of the bank examiner and claimed by it and allowed as deductions in its income tax returns for prior years as representing partial worthlessness of the bonds. Petitioner contends that the basis of the bonds should not be so reduced and that it is entitled to restore such prior write-down so as to include the amounts thereof in the cost basis of the bonds. It supports its position on the following grounds: (1) That such write-downs were made involuntarily at the order of a bank examiner and without a then ascertainment of partial worthlessness of the bonds by the petitioner, and that, consequently, deductions of such write-downs were improperly claimed in its returns by petitioner and were unallowable; (2) No tax benefit was derived in the year such write-downs were ordered and deductions claimed therefor. *398 The petitioner's contention, that the write-downs were involuntarily made on its books because required by the bank examiner may be accepted as true because of the necessity of compliance with the examiner's orders. But petitioner's act in making the required write-downs is not the significant factor in this situation. That factor is the voluntary act of the petitioner in claiming the deduction of the amount of each write-down on its return for the year in which the write-down was ordered. Petitioner was not and could not have been compelled by the bank examiner to claim such deductions on its returns for the years in question. We know of no provision of the law or the regulations requiring the then taking of such deductions unless there was, in fact, at that time a demonstrable partial worthlessness of the bonds. In , we said: "In a case, not hard to imagine, where the taxpayer bank seeks such a deduction in a year different from that used by the bank examiner the bank too would be entitled to prove facts in refutation of the bank examiner's determination". Petitioner has compromised its position *399 by thus claiming the write-downs, or charge-offs, as deductions for the years in which they were made. Such voluntary claim is, in our opinion, clearly indicative of its concurrence in the bank examiner's determination of partial worthlessness of the bonds and of its having made proper charge-offs in the amounts of such determinations. By making such claims over the affidavit of its officer, petitioner represented that it had ascertained the bonds to be partially worthless to the extent then claimed. We will now consider other facts relative to petitioner's fundamental contention, that the deductions were improperly taken for the years as claimed in its returns and were unallowable in those years. In support of this contention petitioner submitted in evidence published financial statements and data as to the operating revenues of the obligors on some of the bonds involved herein. High and low market quotations on some of the bonds for the years as shown in our findings were also submitted by petitioner. Respondent opposes consideration of this evidence on the question of the value of the bonds written down in 1936 on the ground that under the regulations [1] then in effect, "there *400 is a conclusive presumption that the charge-offs made at the direction of the national bank examiner in those years shall for income tax purposes be considered worthless," and that "such presumption is not rebuttable". It is unnecessary to say more than that this contention is clearly untenable. ; and As to the write-downs in the years other than 1936 respondent concedes that the applicable regulations permit a showing by petitioner "that the action of the national bank examiner was incorrect", since such regulations create only a prima facie presumption that such action is correct. *401 The evidence submitted by petitioner of the financial statements, to the correctness of which there is no substantiating evidence, operating expenses of the obligors of the bonds, and the market quotations on the bonds, in the years of the various writedowns, is not persuasive that the bonds had a value greater than that determined by the bank examiner. Subsequent events as stipulated by the parties establish the soundness of his appraisal. Of the eleven bond issues written down at his orders seven of them were later sold by petitioner in one or the other of the taxable years at a price below their charged down value. The issues on which more than the charged down value was realized were as follows: Charged Down
Selling
Par Value
Cost
Value
Price
International Tel. & Tel.
$15,000.00
$19,031.78
$15,000.00
$15,012.75
City of Nuremberg
15,000.00
14,487.50
3,500.00
3,710.00
Nat. Elec. Power
20,000.00
16,775.00
1.00
966.58
St. Louis San Francisco Ry. Co.
30,000.00
25,950.00
2,400.00
2,736.66
Thus on issues totalling $80,000 par value, costing $76,244.28, and charged down to $20,901, there was an actual realization of $22,425.99 or $1,524.99 above *402 charged down value - a variation of approximately two percent based on the cost of the securities. Most of this variation was due to liquidation dividends in 1938 on bonds of the National Electric Power Company which had gone into bankruptcy in 1932. The next largest variation was that of $336.66 gain over charged down value on bonds of the St. Louis, San Francisco Railway Co. on which bonds the interest had been in default since 1933. As to the negligible gain of $12.75 over charged down value realized on $15,000 par value bonds of International Telephone & Telegraph Co., another $15,000 block of the same issue, similarly charged down, was sold in the same year for $432.55 below the charged down value. We have found as facts that the bonds written down in the respective prior years were then worthless to the extent of the amount of the write-downs and were then ascertained to be so worthless and charged off by petitioner, and upon these and all the other facts of record we are of the opinion that the petitioner has not sustained its burden of showing that the deductions resulting from such write-downs were improperly or erroneously claimed and allowed for the prior years when the *403 write-downs were ordered and the partial losses charged off and claimed by petitioner on its returns. Cf. . We hold that the respondent did not err in determining that the cost basis of the bonds sold in 1938 and 1939 should be reduced to the extent of such prior deductions. The fact that petitioner enjoyed no tax benefit from such deductions in certain of the years when they were claimed and allowed is immaterial. . Cf. . Decision will be entered under Rule 50. Footnotes
*. Profit of $965.58 included in 1938 return and deficiency letter based on write-down value.↩
1. ART. 23(k)-1, Regulations 94. ART. 23 (k)-1, Bad Debts. * * * * * * * *
Where banks or other corporations which are subject to supervision by Federal authorities (or by State authorities maintaining substantially equivalent standards) in obedience to the specific orders of such supervisory officers charge off debts in whole or in part, such debts shall be conclusively presumed, for income tax purposes, to be worthless or recoverable only in part, as the case may be, but in order that any amount of the charge-off may be allowed as a deduction for any taxable year it must be shown that the charge-off took place within such taxable year.↩